IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. JASON D. NIELSON, Defendant. | 4:16CR3066<br>September 1, 2016<br>2:09 p.m.<br>Lincoln, Nebraska |

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE CHERYL R. ZWART
UNITED STATES MAGISTRATE JUDGE

A-P-P-E-A-R-A-N-C-E-S:

FOR THE PLAINTIFF: MR. MICHAEL P. NORRIS
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506

FOR THE DEFENDANT: MR. JOHN C. VANDERSLICE
Assistant Federal Public Defender
100 Centennial Mall North
112 Federal Building
Lincoln, NE 68508

DIGITAL OPERATOR: JERI BIERBOWER

TRANSCRIBER: LORI J. SEHNERT
General Reporting Service
610 J Street, Suite 20
Lincoln, NE 68508

\- - -

Proceedings recorded by digital sound recording, transcript produced by transcription service.

(Thursday, September 1, 2016, at 2:09 p.m.)

THE COURT: We are on the record in Case No. 4:16CR3066, United States of America vs. Jason Nielson. Counsel, please enter your appearance.

MR. NORRIS: Your Honor, for the United States, I'm Michael Norris.

MR. VANDERSLICE: And John Vanderslice on behalf of Mr. Nielson, Judge.

THE COURT: Mr. Nielson, you're here today because I've been told that you want to enter a plea of guilty to Count 3 of the Indictment. Is that true?

THE DEFENDANT: Yes, ma'am.

THE COURT: I need to explain to you, sir, that I am not your sentencing judge and I'm not the judge who will determine whether your guilty plea is accepted and whether your Plea Agreement is accepted. That matter will be taken up by Judge Gerrard, who is your sentencing judge. But what I can do for you today is gather some information from you and make a recommendation to Judge Gerrard on those issues. Do you agree to proceed before me?

THE DEFENDANT: I do, ma'am.

THE COURT: Please raise your right hand. Do you solemnly swear to tell the truth, the whole truth, and nothing but the truth?

THE DEFENDANT: I do.

JASON NIELSON, DEFENDANT, SWORN

THE COURT: You're now under oath. You've sworn to tell the truth, which means if you lie during this proceeding, you can be separately prosecuted for the crime of perjury. Do you understand that?

THE DEFENDANT: I do.

THE COURT: At this time, I'm going to have Mr. Norris explain to you the charge to which you intend to plead guilty and the possible penalty for that charge.

Mr. Norris.

MR. NORRIS: Yes, Your Honor. May I -- thank you.

You will be entering a plea to Count 3 of the Indictment. That charges you with the receipt of child pornography. The receipt of child pornography is punishable by a maximum of 20 years of imprisonment, a mandatory minimum of five years, a maximum of $250,000 fine, a special assessment of $100, and a term of supervised release of not less than five or up to life impris- -- or up to life. Do you understand the nature of the charges?

THE DEFENDANT: I do.

MR. NORRIS: Do you understand the maximum penalties?

THE DEFENDANT: Yes.

MR. NORRIS: Thank you.

THE COURT: Having heard the charges and the possible penalties again, is it still your intent to plead guilty?

THE DEFENDANT: Yes.

EXAMINATION

BY THE COURT:

Q. I have in front of me a Petition to Enter a Plea of Guilty and a Plea Agreement. Do you have those documents in front of you?

A. Yes, ma'am.

Q. They appear to have been signed by you on August 31st, which is yesterday. Is that right?

A. Yes, ma'am.

Q. At the time you went over these documents, was your attorney with you?

A. Yes, ma'am.

Q. Going to the Petition. That's the one with all the questions and answers in it. Did you read these questions?

A. I did.

Q. Did your attorney explain the questions to you?

A. He did.

Q. Did you answer the questions out loud?

A. Yes.

Q. Were the answers you stated out loud the truth?

A. Yes.

Q. Did your attorney write down your answers?

A. Yes, ma'am.

Q. Did he write them down correctly?

A. He did.
Q. And after going through the Petition, did you sign it?
A. I did.
Q. Going to the Plea Agreement. Did you read the Plea Agreement?
A. Yes, ma'am.
Q. Did your attorney explain the Plea Agreement to you?
A. He did.
Q. Were there any questions about the meaning of the Plea Agreement that he was not able to answer?
A. No.
Q. And after going through the Plea Agreement, did you sign it?
A. I did.
Q. When you went over these documents yesterday, were you under the influence of drugs, or alcohol, or anything that would impair your thinking?
A. No, ma'am.
Q. Are you under the influence of anything right now?
A. I am not.
Q. Has anybody threatened you in any way to get you to plead guilty?
A. No.
Q. Has anybody promised you anything, other than the promises in the Plea Agreement, to get you to plead guilty?
A. No.

Q. Do you understand, sir, that if the Court accepts your plea of guilty, you will be found guilty of a felony?

A. I do.

Q. Do you understand that you have the right to plead not guilty and make the Government try to prove this case at trial?

A. I do.

Q. Do you understand you are giving up your trial rights by pleading guilty?

A. I do.

Q. You've been represented in this case by Mr. Vanderslice, is that correct?

A. Correct.

Q. Do you believe that he has investigated this case sufficiently so that you know what to do today?

A. I do.

Q. Are you satisfied with his representation?

A. I am.

Q. Do you understand, sir, that if you chose to go to trial, you would have the right to counsel representation at the trial at no cost to you?

A. I do.

Q. As that applies to you, Mr. Vanderslice would be with you at that trial, he would represent your interests, and he would never send you a bill for that service. Do you understand that?

A. I do.

Q. Do you understand that if you chose to go to trial, you would have a jury trial?

A. I do.

Q. Do you understand that, at that trial, you would have the right to see and hear the witnesses who testify against you, and to have them cross-examined on your behalf?

A. I do.

Q. Do you understand you would have the right to call witnesses for you and, if they would not come voluntarily, you could get a court order called a subpoena to make them come to the trial?

A. I do.

Q. Do you understand that if you went to trial, you could testify, if you wanted to, or you could exercise your right to remain silent?

A. I do.

Q. Do you understand that, as opposed to testifying, you could also remain silent?

A. Yes.

Q. And do you understand that if you remain silent at the trial, the jury would not be allowed to consider that silence in deciding whether you are guilty?

A. I do.

Q. And, finally, sir, do you understand that if you chose to go to trial, the Government would not get a conviction against you unless it was able to determine by every single juror that you

are guilty beyond a reasonable doubt?

A. I do.

Q. Are you willing to give up all of those trial rights, including your right to counsel representation at that trial, and plead guilty in this case instead?

A. I am.

Q. With a guilty plea, you will have a felony record and with that felony record comes the loss of civil rights. Those rights include the right to vote, the right to serve on a jury, the right to hold a public office, the right to carry a weapon. You can also lose federal benefits, but you will lose rights. Do you understand that?

A. Yes.

Q. And knowing that you will lose civil rights, are you willing to plead guilty?

A. I am.

Q. Finally, there are community consequences that come with having a felony record. The ones that come to mind most often are the difficulty with employment, the difficulty with housing, and in a case such as this, the requirement that you register as a sex offender. Do you understand that?

A. I do.

Q. And knowing that those consequences exist and that the Court can do little to help you with them, are you willing to plead guilty?

A. Yes.

Q. You're looking at a sentence in this case of a minimum of five years and up to 20 years in prison, a possible fine of up to $250,000 could be imposed in addition to any term of imprisonment, supervised release of at least five years and up to a lifetime, and a $100 mandatory special assessment. Is that your understanding of the penalty that goes with the charge to which you intend to plead guilty?

A. It is.

Q. In this case, you have a -- what they call an 11(c)(1)(C) Plea Agreement, which means you have a plea agreement where you and the Government have decided that the right sentence is 132 months. Is that correct?

A. It is.

Q. Now I'm going to explain to you what Judge Gerrard is going to consider in deciding whether he's going to accept that recommendation from you and the Government. Has Mr. Vanderslice explained to you the sentencing guidelines?

A. He has.

Q. Has he explained that those guidelines provide the starting point that Judge Gerrard will look in determining what your sentence ought to be?

A. Yes.

Q. Do you understand that Judge Gerrard will consider all of your relevant conduct in determining your sentence?

A. I do.

Q. For example, in this case there are several counts. He's going to consider the facts underlying all of those counts in determining the appropriate sentence. Do you understand that?

A. I do.

Q. He will also consider the number of images, the ages depicted in those images, whether you have a criminal history, those types of things. Do you understand?

A. I do.

Q. And once he considers all of that conduct and makes his findings, do you understand that he can agree that 132 months is the correct sentence, but he could also disagree? And if he disagrees, you will be allowed to withdraw your plea of guilty and consider how you want this case to end, whether by going to trial or by pleading guilty with a different plea agreement. Do you understand that?

A. I do.

Q. Now, assuming that Judge Gerrard does decide that 132 months is the correct sentence, do you understand that once he tells you that sentence is the sentence of imprisonment you are facing, you will be required to serve all of that sentence, less no more than 54 days per year for good time served and then only if you earn good time?

A. Yes, ma'am.

Q. Now, after you serve any time in prison, you will be placed

on supervised release for at least five years and perhaps for the rest of your life. I want to make sure you understand what that means. Even though you are out of prison and have served your prison sentence, you are still subject to the sentencing order in this case. By that I mean, during the time of sentencing, that sentencing order is going to include rules that you have to follow for a minimum of five years and perhaps for the rest of your life after you get out of jail. Those are called conditions of release. Do you understand that?

A. I do.

Q. Do you understand that if you violate those conditions of release, you can be brought back to court and sent back to jail?

A. I do.

Q. Do you understand that if you violate those conditions of release by committing another crime, your sentence or penalty for that separate crime could be greater than it otherwise would have been merely because you were still serving your sentence in this case when you committed the next crime? Do you understand that?

A. I do.

Q. You will be required to pay a $100 mandatory special assessment. Were you aware of that?

A. Yes.

Q. In cases such as this, the Government may have evidence supporting a claim of restitution. I want to make sure that you understand what that means. If you cause harm to other people

through your criminal conduct, you can be required to pay for that harm. That is called restitution. Do you understand that?

A. Yes.

Q. Do you understand that at the time of sentencing, the Government may produce evidence for Judge Gerrard to consider, and he may order you to pay restitution? Do you understand that?

A. Yes.

THE COURT: Is this a $5000 special assessment?

MR. NORRIS: I think, because he's indigent, it won't be.

THE COURT: I've already discussed your Plea Agreement with the Government to a degree, but what I'm going to do now is have Mr. Norris explain it more thoroughly to you. I ask you to listen as he does that. I will ask you questions about what he says.

Mr. Norris.

MR. NORRIS: Your Honor, the substance of the Plea Agreement is as follows. There will be a plea to Count 3, which is the receipt of child pornography. The United States will dismiss Counts 1 and 2: Count 1 charging production, Count 2 charging solicitation and advertisement of child pornography. There is an 11(c)(1)(C) sentencing agreement that the Court has already gone over with the defendant. The agreed-upon sentence being 132 months, or 11 years. There is a waiver of appeal, a waiver of the right to withdraw his guilty plea, and other than

that, the substance of the Plea Agreement is similar to what this Court has seen over and over again.

THE COURT: Mr. Vanderslice, does that fairly summarize the Plea Agreement?

MR. VANDERSLICE: I think it does, yes.

BY THE COURT:

Q. Mr. Nielson, did you listen as Mr. Norris described the Plea Agreement?

A. Yes.

Q. Does his description match your understanding of your agreement with the Government?

A. It does.

Q. As we've already talked about, you are agreeing in this Plea Agreement to a sentence of 132 months subject to Judge Gerrard's approval. Is that correct?

A. Yes.

Q. Your Plea Agreement also includes a waiver of appeal and collateral attack. I need to make sure you understand what you're giving up here. Everything that's done by this Court is subject to being looked at by another Court to make sure it was done right. That process is called an appeal and the Court that looks at it is the Eighth Circuit Court of Appeals. Do you understand that?

A. Yes.

Q. Do you understand that under the terms of this Plea

Agreement, you're giving up your right to that appeal process unless you are claiming that Mr. Vanderslice provided you with ineffective assistance of counsel?

A. Yes.

Q. Collateral attack is different than an appeal. A collateral attack allows you to challenge your conviction and your sentence by claiming your constitutional rights were violated. Do you understand?

A. I do.

Q. Do you understand that under the terms of this Plea Agreement, you're giving up your right to that type of proceeding as well, unless you are claiming that what you're admitting to here today is not a crime, or you are claiming that Mr. Vanderslice provided you with ineffective assistance of counsel?

A. Yes.

Q. Do you understand that your waiver of appeal and your waiver of collateral attack apply both to your conviction and to the sentence you have not yet received?

A. Yes.

Q. Having considered your options and having had a chance to discuss it with your attorney, have you decided to give up your right to appeal and your right to collateral attack with the exceptions listed in the Plea Agreement?

A. Yes.

Q. Has anybody made any promises to you that are not in the Plea Agreement?

A. No.

Q. Do you understand, sir, that whether you plead guilty or whether you're found guilty at trial, you could get the same sentence?

A. Yes.

Q. Putting it a different way, do you understand there is no guarantee your sentence will be less because you pled guilty?

A. Yes.

THE COURT: At this time, then, I'm going to have Mr. Norris explain the factual basis for your plea. I ask you to listen as he does that. I will ask you questions about what he says.

Mr. Norris.

MR. NORRIS: Your Honor, the factual basis is set forth at page two of the Plea Agreement. Defendant began a Facebook and text relationship with a 14-year-old minor female. Defendant was aware that the minor was 14. He knew the family and was advised by the minor that she was 14.

On February 8th of 2015, he texted a picture of his penis to the 14-year-old girl. In return, she sent him a nude image of herself exposing her breast and pubic area. He asked for another image and sent an additional image of his penis. She responded by sending another image of herself masturbating her vagina with

her fingers. When he complained the image was too dark, she sent a lighter image with a close-up of her vaginal area. This is the sexually explicit conduct in the image that comprises the receipt. And I think that's sufficient for now.

THE COURT: Mr. Vanderslice, do you agree if this case went to trial, that image -- that evidence would go before a jury?

MR. VANDERSLICE: I believe so, Judge, yes.

BY THE COURT:

Q. Mr. Nielson, did you listen as Mr. Norris described the evidence against you?

A. I did.

Q. Is what he said the truth?

A. Yes.

Q. On February 8th of 2015, were you in Nebraska?

A. Yes.

Q. While in Nebraska, did you receive or attempt to receive images of children engaged in sexually explicit conduct?

A. Yes.

Q. When I use the term "children," I mean minors, people under the age of 18. Do you understand that?

A. Yes.

Q. And did you use your computer to get that?

A. Correct.

Q. Was your computer connected to the internet?

A. Correct.

Q. Do you agree that the internet is a means of transferring information across state lines?

A. I do.

Q. And did you, in fact, receive images on your computer --

A. I did.

Q. -- of children engaged in sexually explicit conduct?

A. I did.

Q. Did you do this conduct in Nebraska?

A. Yes.

THE COURT: Any additional questions?

MR. NORRIS: No, Your Honor.

THE COURT: Mr. Vanderslice?

MR. VANDERSLICE: No.

THE COURT: Mr. Norris, do you believe the guilty plea is knowing, intelligent, and voluntary, and that there is a factual basis for it?

MR. NORRIS: Yes, Your Honor.

THE COURT: Mr. Vanderslice, do you agree?

MR. VANDERSLICE: I do agree.

THE COURT: Mr. Nielson, do you want this Court to accept your plea of guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions of me before I proceed?

THE DEFENDANT: I do not.

THE COURT: To Count 3 of the Indictment, which alleges that on or about February 8th of 2015, while in the District of Nebraska, you did knowingly receive and attempt to receive visual depictions, that is digital and computer images and files, that had been mailed, and shipped, and transported in interstate commerce by means including a computer, and that these were visual depictions of minors engaged in sexually explicit conduct, what do you plead?

THE DEFENDANT: Guilty.

THE COURT: I do find that your guilty plea is knowing, intelligent, and voluntary, and that there is a factual basis for it. I will recommend to Judge Gerrard that he accept your plea of guilty. I will also recommend that he accept your Plea Agreement. He'll take up the issue of your Plea Agreement at sentencing, and we're looking at a proposed sentencing date of December 2nd at 1:30 in the afternoon.

Does that work for everyone?

MR. NORRIS: Yes, Your Honor.

MR. VANDERSLICE: Yes, it does.

THE COURT: Is there anything else we need to take up?

MR. NORRIS: No, Your Honor.

MR. VANDERSLICE: No, Judge. Thank you.

THE COURT: We are in recess.

(Recessed at 2:26 p.m.)

C E R T I F I C A T E

I, Lori J. Sehnert, court-approved transcriber, certify that the foregoing is an accurate transcript from the official digital sound recording provided to me of the proceedings made in the above-entitled matter.

s/Lori J. Sehnert DATE: September 15, 2016

Signature of Approved Transcriber

- - -